# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL D. WARDELL,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 13-201Erie** |
| | ) | |
| **v.** | ) | **District Judge McVerry** |
| | ) | |
| **CITY OF ERIE, et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the motion to dismiss filed by Defendants Janus, Kaschalk, Russell and Williams [ECF No. 28] be GRANTED and the motion to dismiss filed by Defendants Habursky, Kubiak, Markham and Orr [ECF No. 32] be GRANTED in the following manner:

- Summary judgment should be granted in favor of Defendants as to the false arrest/false imprisonment and malicious prosecution claims;

- The motion to dismiss should be granted as to the excessive force claim;

- To the extent Plaintiff raises a failure-to-intervene claim, it should be dismissed; and

- The motion to dismiss should be granted as to the conspiracy claim.

Furthermore, this Court should decline to exercise supplemental jurisdiction over any pendant state law claims and, due to the prejudice to Defendants, as well as Plaintiff's repeated inability to cure deficiencies through amendment, Plaintiff should not be permitted to further amend his complaint.

II.     **REPORT**

   **A.  Relevant Procedural History**

   Plaintiff, acting *pro se*, filed this civil rights action on July 8, 2013, along with another similar civil rights action, docketed at Civil Action No. 13-202Erie. The two cases were consolidated. Plaintiff claims that his constitutional rights were violated during his arrest on July 25, 2011, and his subsequent detention and prosecution. A group of Erie County Sheriff's Deputies, as well as a group of City of Erie police officers, participated in the events leading up to and surrounding Plaintiff's arrest.

   Plaintiff was directed to file an Amended Complaint at this case number in order to combine the two cases and to more fully state his claims against all Defendants. Because the Original Complaint filed at each of the case numbers was vague as to the acts alleged against each of the Defendants, this Court specifically directed that the Amended Complaint contain "all of Plaintiff's allegations against every named Defendant" and that Plaintiff "explain how each Defendant violated his civil rights." ECF No. 13.

   In the Amended Complaint, Plaintiff characterized his case as "a civil rights action brought under U.S.C. § § 1983-1985 and raising supplemental state law claims concerning the actions of Defendant Erie County Sheriff's Dept. and Erie Police's [sic] Dept. in an unlawfully [sic] arrest, maliciously prosecuting [sic], and using excessive and unreasonable force against the Plaintiff Michael D. Wardell. This violating the Plaintiff's constitutional rights under the United States." ECF No. 14, page 1. As Defendants to this action, Plaintiff named the following: City of Erie Police Officers Kaschalk, Janus, Williams, and Russell, and Erie County Sheriff's Deputies Habursky, David Orr, Jeremy Markham, and Doug Kubiak. Although all these Defendants were

named in the caption of the Amended Complaint, only Kaschalk and Habursky were mentioned within the body of the pleading.

By Memorandum Opinion and Order dated July 24, 2014, this Court liberally construed the Amended Complaint as attempting to raise claims of false arrest/false imprisonment, malicious prosecution, excessive force, and conspiracy. Despite this Court's previous directive, the Amended Complaint was deficient in several ways. Besides lacking basic factual specifics as to what each named Defendant did, the Amended Complaint was lacking in several other respects as it did not indicate the date or place of the incident, the charges that were filed against Plaintiff, how the charges were resolved, or how each of the Defendants acted to advance the alleged conspiracy. ECF No. 25.

As part of the Memorandum Opinion, this Court determined that Plaintiff had not alleged enough facts to adequately bring his claims. The Memorandum Opinion then explicitly laid out the elements of the causes of action of false arrest/false imprisonment, malicious prosecution, excessive force, and civil conspiracy. Id. at pages 3-4. Plaintiff was ordered to file a Second Amended Complaint that included all the claims against all the Defendants, fully explaining which individual Defendant took what action and when that action was taken. The Memorandum Opinion and Order warned that: "The Second Amended Complaint must be a single stand-alone document that does not incorporate or reference either the Original Complaint or the First Amended Complaint. In the interests of fairness to the Defendants who have now filed two dispositive motions, this will be Plaintiff's final opportunity to amend his complaint." ECF No. 25.

Thereafter, Plaintiff filed the Second Amended Complaint. ECF No. 26. Both sets of Defendants have filed a motion to dismiss in response to the Second Amended Complaint. ECF

No. 28; ECF No. 32.[1] Plaintiff filed an Opposition Brief against the City Defendants' motion to dismiss, but has not filed an Opposition Brief against the County Defendants. ECF No. 31. These motions are ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro se* litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

---

[1] Pursuant to the requirements of Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010), Plaintiff was informed that the instant motions to dismiss may be converted into motions for summary judgment. See ECF No. 30; ECF No. 34. These Orders specifically warned: "The nonmovant is advised that in treating the motion to dismiss as a motion for summary judgment, the motion will be evaluated under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure. The parties are on notice that failure to respond to the pending motion may result in the entry of judgment against the nonmovant. The nonmovant response to a motion for summary judgment may include opposing or counter-affidavits (executed by Plaintiff or other persons) …" Id.

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme

Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).


### 3)  Motion for Summary Judgment pursuant to Rule 56

Defendants have submitted some evidence in support of their motions to dismiss. Where it is necessary to do so, this Court will convert the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) into motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v.

Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322.  See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C. The Factual Basis for Plaintiff's Claims

Despite repeated instructions, Plaintiff's Second Amended Complaint still does not provide the facts necessary to understand the story of what happened to him, when it happened and by whom. Instead, the Court is forced to piece together the facts that form the basis of Plaintiff's claims of false arrest/false imprisonment, malicious prosecution, excessive force, and conspiracy from the entirety of the evidentiary record and submissions.[2]

On July 25, 2011, at approximately 4:35 p.m., Defendant Corporal Kubiak, who was on duty at the Erie County Courthouse, received information from a 15 year old female who was a client of the Erie County Juvenile Probation department, that a man had approached her in Perry Square, made advances toward her, and attempted to grab her[3]. The complainant provided a description of the man and the pickup truck he was driving at the time of the incident.

---

[2] Plaintiff's Second Amended Complaint also makes reference to defamation, retaliation under the First Amendment, and racial profiling under the Equal Protection Clause. These bald assertions are merely buzz words that Plaintiff uses in support of his other claims. Even liberally construing the allegations of the Second Amended Complaint, Plaintiff has not set forth any factual basis upon which such legal claims could be based.

[3] Perry Square is bordered on the north and south by North Park Row and South Park Row and is intersected by Peach Street running north and south. The Erie City Police Department is situated on Perry Square and the Erie County Courthouse, located a half block off Perry Square, is less than a two minute walk away.

The Erie Police Department was notified of the incident. Erie Police detectives requested an interview with the complainant and Deputy Sheriffs Markham and Orr escorted her to the Erie Police Department.

At 5:10 p.m., Deputies Kubiak and Habursky reviewed courthouse security video taken from around the Courthouse and observed a blue/black pickup truck with a white stripe down the driver's side door which matched the description of the vehicle given by the complainant. Kubiak and Habursky observed the driver of that vehicle to match the description of the driver given by the complainant. Habursky contacted the Police Department about the videotape and police requested that Habursky bring the videotape to the Erie Police Department.

At 5:40 p.m., Habursky left the Courthouse driving his personal vehicle (a red 2006 Chevy Colorado pickup truck) to deliver the videotape to the Erie Police Department. Habursky noticed the blue pickup truck with the white stripe parked, with a driver's side occupant, between South and North Park Row on Peach Street (Perry Square). Habursky pulled his own pickup truck behind the blue pickup truck to obtain the license plate information. The blue pickup pulled out of its parking space and began to drive away and Habursky followed, proceeding northbound on Peach Street.

Just past the intersection of North Park Row and Peach Street, the blue pickup truck pulled over on the west side of Peach Street and parked without being directed to do so by Habursky. Habursky parked directly behind the blue pickup truck, but remained in his vehicle. The driver of the blue pickup truck exited his vehicle and approached Habursky's vehicle in a brisk running manner. Habursky ordered the driver, later identified as Plaintiff Michael Wardell, to return to his vehicle and the driver complied. Habursky called 911 via his personal cell phone

in order to request marked units from the Erie Police Department to assist him. Habursky remained in his vehicle.

After a short period of time, Plaintiff exited his vehicle and again approached Habursky's vehicle. Habursky ordered Plaintiff to return to his own vehicle and again Plaintiff complied. Habursky then exited his own vehicle and approached Plaintiff's vehicle noticing a strong odor of alcohol. Habursky requested Plaintiff's driver's license, registration, and proof of insurance. Plaintiff produced his driver's license and Habursky returned to his own vehicle. Habursky witnessed Plaintiff dump a beverage onto the pavement. The beverage was later determined to be an open can of beer.

Erie Police arrived on the scene and Erie Police Officers Kaschalk and Janus questioned Plaintiff. Kaschalk and Janus administered field sobriety tests, all of which Plaintiff failed. Kaschalk and Janus then placed Plaintiff under arrest and handcuffed him. Plaintiff began to argue with Kaschalk and became aggressive with the police officers. City police officers took Plaintiff to the ground to regain control of him and after they did, Plaintiff was assisted back to his feet and escorted to a patrol car. As Plaintiff was being assisted into the patrol car, he kicked Kaschalk. After Plaintiff was secured in the patrol car, he began to kick the windows of the car. Plaintiff was then transported to the Erie Police Department by City of Erie police officers.

By Criminal Complaint dated July 25, 2011, Sergeant Keith Kaschalk of the Erie Police Department charged Plaintiff with aggravated assault, resisting arrest, driving under the influence, and possession of an open container of alcohol. These charges were prosecuted at Erie County docket number 2420-2011. ECF No. 28-1, pages 2-3. These charges were the subject of a suppression motion before the Honorable Shad Connelly of the Court of Common Pleas on

December 15, 2011. <u>See</u> ECF No. 32-4, pages 1-31. In his Order granting the motion to suppress, Judge Connelly ruled:

> "This Court finds that the Defendant [Wardell] was not free to leave after Chief Deputy Sheriff Habursky put his hand on his gun, told the Defendant to get back into the vehicle, and retained his driver's license. Such constituted a seizure of the Defendant's person. [FN1 – Although not in uniform, the Chief Deputy was wearing a shirt with a sheriff's badge insignia, carrying a gun and badge on his belt, and the Defendant knew him professionally to be a deputy sheriff.] The Chief Deputy did not have authority to seize or arrest the Defendant at the time. The Pennsylvania Supreme Court in a line of cases has held that sheriffs can only arrest for breaches of the peace and felonies committed in their presence. <u>Commonwealth v. Dobbins</u>, 934 A.2d 1170 (Pa. 2007). This is a power which is no different than that conferred upon an ordinary citizen. In the case at bar, the Defendant clearly neither breached the peace nor committed a felony in the Chief Deputy's presence. Thus, the Chief Deputy did not have the authority to either seize or detain the Defendant. All evidence obtained as a result of the Defendant's illegal seizure is hereby ordered suppressed."

ECF No. 28-4, pages 1-2. Thereafter, these charges were *nol prossed* due to lack of evidence. <u>See</u> ECF No. 28-5.

On September 27, 2011, Plaintiff was charged by Detective Conway of the City of Erie Police Department with the crimes of Harassment, Stalking, and Luring a Child into a Motor Vehicle and those charges were prosecuted at Erie County docket number 3034-2011. <u>See</u> ECF No. 32-2, page 1-4. Following a jury trial on March 15, 2012, Plaintiff was acquitted on all charges. <u>Id</u>. Plaintiff does not allege that these later filed charges form the factual basis of his claims, but instead focuses on the earlier filed charges of aggravated assault, resisting arrest, driving under the influence, and possession of an open container of alcohol.

### D. Lack of Probable Cause as Necessary Element of Causes of Action

The absence of probable cause is an essential element of both the false arrest/false imprisonment and malicious prosecution claims, and such claims cannot proceed if probable

cause existed. See Dowling v. City of Philadelphia, 855 F.2d 136 (3d Cir. 1988)[4]; McKenna v. City of Philadelphia, 582 F.3d 447 (3d Cir. 2009)[5]. All Defendants move to dismiss the false arrest/false imprisonment and malicious prosecution claims for failure to state a claim based upon Plaintiff's failure to meet the lack of probable cause element. Because the probable cause determination is a fact specific inquiry [see Maryland v. Pringle, 540 U.S. 366, 371 (2003) ("probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts")], this Court will convert the motions to dismiss into motions for summary judgment here.

Plaintiff bases his false arrest/false imprisonment claim and his malicious prosecution claim on the fact that the state court determined that his "arrest was illegal" and that evidence obtained at the time of arrest was later suppressed. However, the fact that evidence obtained at the time of Plaintiff's arrest was later suppressed (because a sheriff's deputy lacked authority under Pennsylvania law to initially detain him) does not demonstrate lack of probable cause.

---

[4] "The proper inquiry in a § 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling, 855 F.2d at 141. To state a claim for false arrest, a plaintiff must allege: "1) that there was an arrest; and 2) that the arrest was made without probable cause." Dennis v. City of Bridgeton, 2006 WL 3359712, at *2 (D.N.J. 2006). To establish a claim for false imprisonment, a plaintiff is required to show that: 1) he was detained; and 2) the detention was unlawful. Gwynn v. City of Philadelphia, 719 F.3d 295, 304 n.4 (3d Cir. 2013) citing Renk v. City of Pittsburgh, 537 Pa. 68 (1994). A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures. Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

[5] In order "[t]o prove malicious prosecution under section 1983, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." McKenna, 582 F.3d at 461 (internal citation omitted).

Under the Fourth Amendment, an arrest is permissible "where there is probable cause to believe that a criminal offense has been or is being committed." Devenspeck v. Alford, 543 U.S. 146, 152 (2004). To determine whether a law enforcement officer had probable cause to arrest, the district court must necessarily "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause[.]" Pringle, 540 U.S. at 371, quoting Ornelas v. United States, 517 U.S. 690, 696 (1996). See also Illinois v. Gates, 462 U.S. 213 (1983) (the existence of probable cause is determined by looking at the totality of the circumstances). The existence of probable cause is to be considered via a "common sense approach" based on the totality of the circumstances. Paff v. Kaltenback, 204 F.3d 425, 436 (3d Cir. 2000).

In the present case, following their arrival on the scene, police officers administered three field sobriety tests to Plaintiff and Plaintiff failed all three. There was an odor of alcohol coming from Plaintiff's truck and Plaintiff was seen dumping an open container of beer out of his vehicle. Police observed that Plaintiff had glassy eyes and slurred speech. See ECF No. 28-2. Given these facts with which they were presented, Erie police officers acted with probable cause to arrest and later initiate criminal proceedings against Plaintiff for driving under the influence and possession of open container. Because the record before this Court establishes that Defendants acted with probable cause, the lack of which is a necessary element of false arrest/false imprisonment and malicious prosecution, Plaintiff's claims fail. Summary judgment should be granted in favor of the Erie police officers on these claims.

Furthermore, the evidence reveals that Sheriff's Deputies did not arrest or charge Plaintiff.[6] <u>See</u> ECF No. 28-1; ECF No. 28-2; ECF No. 28-3. Because liability can only be imposed if an official played an "affirmative part" in the complained-of constitutional violation [<u>see</u> <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986)], summary judgment should be granted in their favor.

### E. Excessive Use of Force

A claim that a law enforcement officer used excessive force during the course of an arrest must be analyzed under the reasonableness standard of the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989). The Supreme Court recently enumerated a number of considerations that may bear on a district court's determination of the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." <u>Kingsley v. Hendrickson</u>, ___ U.S. ___, ___, 2015 WL 2473447, at *6 (June 22, 2015) <u>citing</u> <u>Graham</u>, 490 U.S. at 396. The <u>Kingsley</u> Court further declared that "We do not consider this list to be exclusive. We mention these factors only to illustrate the types of circumstances potentially relevant to a determination of excessive force." <u>Id</u>. Any reasonableness determination must occur from the perspective of a reasonable officer at the scene and without the benefit of hindsight. <u>Id</u>. at *5.

---

[6] Although Habursky arguably initiated the "detention" and was present at the time of arrest, the evidence demonstrates that he did not arrest or initiate the criminal prosecution against Plaintiff. <u>See</u> ECF No. no 28-1; ECF No. 28-2; and ECF No. 28-3.

Plaintiff's allegations of excessive force are only directed against Police Officers Kaschalk, Williams and Russell.[7] Plaintiff alleges that Kaschalk he "created [a] radius of harm that resulted in a violation of Plaintiff's constitutional rights that while Plaintiff was handcuffed "other officers who assistant [sic] him in the plaintiff's unlawful arrest when they threw the Plaintiff to the ground and later tazer him several times." ECF No. 26, page 5. Plaintiff's allegations against Kaschalk fail to state an excessive force claim upon which relief can be granted. Plaintiff does not allege that Kaschalk used <u>any</u> force against him. Plaintiff's theory that Kaschalk created "a radius of harm" does not provide a basis for liability in the context of an excessive force claim. Accordingly, the motion to dismiss should be granted as to the excessive force claim against Kaschalk.

Next, Plaintiff alleges that Williams and Russell "after arriving on scene of unlawful arrest and seeing Plaintiff is handcuff[ed] behind his back did […] threw [sic] Plaintiff to the ground. Because Plaintiff show his displease [sic] in being pull around and later victimize by being Taser." ECF No. 26, page 8, page 9. The record evidence reveals that after he was arrested and handcuffed, Plaintiff "began to argue with Sergeant Kaschalk and became aggressive with police officers." ECF No. 32-3, Affidavit of Deputy Sheriff Habursky, ¶ 32. Police officers then took Plaintiff to the ground and after they regained control of him, Plaintiff was assisted to his feet and escorted to a patrol car. <u>Id</u>. at ¶ 33. As Plaintiff was being assisted into the patrol car, he kicked Kaschalk, and once inside the car, he continued to kick the car windows. <u>Id</u>. at ¶¶ 34-35. Plaintiff has not provided evidence to the contrary and even acknowledges that he was expressing his displeasure at being arrested. ECF No. 26, pages 7-8. Accordingly, Defendants are entitled to summary judgment on this claim.

---

[7] Plaintiff does not allege that any Sheriff Deputy used force against him and the evidence indicates that none did. <u>See</u> ECF No. 26; ECF No. 32-3.

As pled, Plaintiff's allegations about being repeatedly tasered are insufficient to state a claim because Plaintiff does not indicate who tasered him or when. Despite this Court's specific instructions and directives, Plaintiff has not provided any factual details here.[8]

### F. Failure to Intervene

To the extent that Plaintiff's allegations against Kaschalk or any other Defendant can be liberally construed as a failure-to-intervene claim, such a claim should be dismissed.

A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986). See also Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002).

To state a valid cause of action "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene." Smith v. Donate, 2012 WL 3537017, at *9 (M.D. Pa. 2012) quoting Mensinger, 293 F.3d at 650-51. There is no distinction between police

---

[8] It is not even clear from the limited record before this Court whether the tazer was used at the scene of the arrest or later at the Erie County Prison. See ECF No. 28-2, Criminal Complaint, ("the Defendant after being handcuffed and arrested for suspicion of DUI and while trying to be placed in the cruiser for transport kicked the affiant in the chest and right hand causing injury and tried to bite the affiant and was flailing around to avoid being placed in the cruiser and the Defendant while being placed in a cell bit another officer. The Defendant required substantial force to subdue and required being tazed several times to be subdued.").

officers and corrections officers in the analysis of a failure-to-intervene claim.[9] <u>Mensinger</u>, 293 F.3d at 651.

If there is no excessive force, then there is no corresponding duty to intervene. <u>See</u> <u>Nifas v. Coleman</u>, 528 Fed.App'x 132, 136 (3d Cir. 2013) ("Because we find that no constitutional violation occurred with respect to excessive force, Nifas also cannot succeed on his failure-to-intervene claims."); <u>Fears v. Beard</u>, 532 Fed.App'x 78, 82 (3d Cir. 2013). Accordingly, to the extent that Plaintiff has advanced a failure-to-intervene claim against any Defendant, it should be dismissed.

### G. Conspiracy

A civil action may be brought by a plaintiff who has been injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." <u>Kirkland v. DeLeo</u>, 581 Fed.App'x 111, 118 (3d Cir. 2014) <u>quoting</u> <u>Farber v. City of Patterson</u>, 440 F.3d 131,134 (3d Cir. 2006) and <u>citing</u> 42 U.S.C. § 1985(3). In order to state a claim for civil conspiracy, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a

---

[9] The <u>Mensinger</u> Court explained: "Both are law enforcements officers, both are sworn to uphold the law, and both are authorized to sue force (even deadly force) toward that end. We are, of course, aware of the obvious security concerns inside the close confines of a prison. However, that is simply one fact that must be considered in determining if a particular application of force is reasonable. It does not suggest a different Eighth Amendment inquiry for corrections officers as opposed to police officers. The law does not allow either to condone or cover up the use of excessive force. Similarly, neither can escape liability by turning either a blind eye or deaf ear to the illegal conduct of their colleagues." <u>Id</u>. at 651-52.

citizen of the United States." United Bhd. Of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983) citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.' " Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) quoting Adickes v. S.H.Kress & Co., 398 U.S. 144, 150 (1970), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003). A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F.Supp. 1011, 1020 (E.D. Pa. 1997). See also Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp.981, 987 (E.D. Pa. 1994) ("While the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

Plaintiff's conspiracy claim is deficient because the Second Amended Complaint does not include any factual allegations of a combination, agreement, or understanding among all or between any of the Defendants. Where a complaint does not contain factual allegations that defendants plotted, planned, or conspired together to carry out the alleged chain of events, the conspiracy claim must fail. Plaintiff has not alleged any specific facts to support a claim that any of the Defendants acted pursuant to any kind of understanding or plan. Without such facts, Plaintiff has not met his burden in pleading conspiracy under § 1983. Accordingly, the motions to dismiss should be granted as to the conspiracy claim.

## H. Supplemental Jurisdiction

As all of the federal claims against these Defendants should be dismissed, this Court should decline to exercise supplemental jurisdiction over the numerous state law claims against them. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

## I. Futility of Amendment

I have recommended that the excessive force, failure-to-intervene, and conspiracy claims be dismissed because Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff should not be permitted to further amend his complaint in this regard.

Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).

In this case, any further allowance of amendment unduly prejudices Defendants. Both sets of Defendants have filed three separate motions to dismiss in response to Plaintiff's claims – the first set of motions to dismiss filed in C.A. No. 13-202Erie was dismissed as moot when that

case was consolidated with the present case and Plaintiff was ordered to file the First Amended Complaint (see ECF No.9; ECF No. 18); the second set of dispositive motions was dismissed when this Court issued its Memorandum Opinion and Order directing Plaintiff to file the Second Amended Complaint (see ECF No. 15; ECF No. 18; and ECF No. 25); and the third set of motions is analyzed in the instant Report and Recommendation.

This Court recognizes that Plaintiff is acting *pro se* and we have repeatedly liberally construed Plaintiff's filings in his favor. Plaintiff should not be allowed further amendment as he has demonstrated a repeated failure to cure deficiencies through the amendments previously ordered by this Court. In this Court's Order dated December 9, 2013, which consolidated the two cases and administratively terminated Defendants' first round of dispositive motions, Plaintiff was specifically directed to amend the complaint so that it contained "all of Plaintiff's allegations against every named Defendant" and that "Plaintiff must explain how each Defendant violated his civil rights." ECF No. 13. In this Court's Memorandum Opinion and Order dated July 24, 2014, which dismissed the second round of dispositive motions, the precise elements of each of Plaintiff's causes of action was explicitly laid out. Moreover, this Court then specifically stated:

> "The Second Amended Complaint **must** include all the claims against all the Defendants, fully explaining which individual Defendant took what action and when that action was taken. See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 267-77 (3d Cir. 2006) (a plaintiff must assert all the essential factual background that would accompany 'the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the event at issue.'). The Second Amended Complaint must be a single stand-alone document that does not incorporate or reference either the Original Complaint or the First Amended Complaint. In the interests of fairness to the Defendants who have now filed two dispositive motions, this will be Plaintiff's final opportunity to amend his complaint."

ECF No. 25, page 5-6 (emphasis in original). Despite these express directives by this Court, Plaintiff still fails to state a claim as to the excessive force and conspiracy claims in the Second Amended Complaint.

Due to the prejudice to Defendants, as well as Plaintiff's repeated inability to cure the identified deficiencies of previously filed complaints, this Court should not allow any further amendment. See Baumgardner v. Ebbert, 2013 WL 4047436, at *3 n.2 (3d Cir. 2013) ("Having had two opportunities to amend his complaint, we agree with the District Court that allowing Baumgardner to amend for a third time would be futile.").


## III.    CONCLUSION

It is respectfully recommended that the motion to dismiss filed by Defendants Janus, Kaschalk, Russell and Williams [ECF No. 28] be GRANTED and the motion to dismiss filed by Defendants Habursky, Kubiak, Markham and Orr [ECF No. 32] be GRANTED in the following manner:

- Summary judgment should be granted in favor of Defendants as to the false arrest/false imprisonment and malicious prosecution claims;

- The motion to dismiss should be granted as to the excessive force claim;

- To the extent Plaintiff raises a failure-to-intervene claim, it should be dismissed; and

- The motion to dismiss should be granted as to the conspiracy claim.

Furthermore, this Court should decline to exercise supplemental jurisdiction over any pendant state law claims and, due to the prejudice to Defendants, as well as Plaintiff's repeated inability to cure deficiencies through amendment, Plaintiff should not be permitted to further amend his complaint.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen days.  Any party opposing the objections shall have fourteen days to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July ___, 2015